UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEREMY JEFFERSON TERRY,<br><br>    Petitioner,<br><br>    v.<br><br>WARDEN,<br><br>    Respondent. | CAUSE NO. 3:20-CV-912-MGG |

## OPINION AND ORDER

Jeremy Jefferson Terry, a prisoner proceeding without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Miami Correctional Facility (MCF 19-11-0405) in which he was found guilty of using a controlled substance. (ECF 1.) Among other sanctions, he lost 45 days of earned-timed credits. (*Id*.)

The charge was initiated on November 7, 2019, when Sergeant A. Burton wrote a conduct report stating as follows:

> On 10-28-2019, at approximately 10:15 am, Offender Terry, Jeremy #256833 P-339 was issued a drug screen for cause by Sergeant A. Burton. Offender Terry was explained the urinalysis rules and was offered an 8 ounce cup of water to drink at the beginning of the test. Offender Terry provided a sample adequate to be tested utilizing the ICUP test cup. After waiting the allotted time of 5 minutes, the test indicated a positive result for Suboxone. Offender Terry chose to have the sample sent to the lab for confirmation rather than sign the Admission of Guilt Form. On 10/28/2019 Sergeant Burton sent the urine sample and paperwork to the laboratory for urinalysis confirmation. On 11-4-2019 the confirmation from the lab was faxed to Miami Correctional Facility. I, Sergeant Burton received the confirmation paperwork 11-7-2019 which indicated the test was

>positive for Suboxan [sic]. . . . Request restitution of $3.25 (ICUP) + $30.00 (Suboxone Confirmation) = $33.25 Total.

(ECF 14-1.) Sergeant Burton also attached the laboratory report showing that Mr. Terry's urine sample tested positive for Buprenorphine, also known as Suboxone.[1] (ECF 14-2; ECF 14-3; ECF 14-4.)

On November 19, 2019, Mr. Terry was formally notified of the charge. (ECF 14-6.) He pled not guilty and requested a lay advocate, and one was appointed for him. (ECF 14-6; ECF 14-7.) He did not request any physical evidence, but requested a witness statement from Correctional Officer K. Lasta to state that he "passed first test but there was no control line, so Burton pulled out another cup and poured sample into another cup." (ECF 14-6.) A statement was obtained from Officer Lasta, who stated: "He poured the sample in front of the offender." (ECF 14-10.)

After a postponement, a hearing was held on December 3, 2019. (ECF 14-9.) Mr. Terry pled not guilty and made the following statement in his defense: "The whole thing is wrong." (*Id.*) Based on the evidence, the hearing officer found him guilty. (*Id.*) As a result, he lost 45 days of earned-time credits and temporarily lost certain privileges. (*Id.*) His administrative appeals were denied. (ECF 14-11; ECF 14-12.) Thereafter, he filed this petition.

When prisoners lose earned time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural

---

[1] Buprenorphine, the primary drug component in Suboxone, is a Schedule III controlled substance. *Dollard v. Whisenand*, 946 F.3d 342, 348 (7th Cir. 2019).

2

protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Mr. Terry first claims that he "did not receive the right to be heard" by the hearing officer. (ECF 1 at 2.) He claims that during the hearing, the hearing officer told him to "sit there and shut the fuck up." (*Id.*) The hearing officer has submitted a sworn declaration attesting that she never made such a statement. (ECF 14-13.) Mr. Terry has not responded to her declaration, despite being given additional time to file a traverse in support of his petition.[2] (*See* ECF 16.) But even if the court were to presume that there was a factual dispute, Mr. Terry has not demonstrated how the hearing officer's alleged statement telling him to be quiet prejudiced his defense. *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (harmless error analysis applies to prison disciplinary proceeding); *see also O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (constitutional error is harmless unless it had a "substantial and injurious effect" on the outcome of the proceeding). The hearing officer clearly noted in the hearing report that Mr. Terry was pleading not guilty, and she also recorded the statement he made in his defense that the

---

[2] Pursuant to the order granting him an extension, his traverse was due by March 1, 2021. (ECF 16.) The deadline passed more than 30 days ago and no traverse has been filed.

3

"whole thing is wrong." (ECF 14-9.) Her report reflects that she considered his statement, but in light of the other evidence, she found him guilty. Mr. Terry does not offer any explanation of what else he would have said in his defense that would have exculpated him from the charge, such that the result of the proceeding might have been different. Therefore, he has not established an error warranting habeas relief.

Although unclear, he may be claiming that the hearing officer violated his right to present evidence. The full panoply of rights available at a criminal trial are not applicable in the prison disciplinary context. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). Nevertheless, an inmate does have a right to request and present evidence when consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 564. The record reflects that at screening, Mr. Terry requested a witness statement from Officer Lasta; her statement was obtained and considered by the hearing officer, but it did not exculpate him. Rather, it confirmed that a second cup had been used in the urine test, but also confirmed that the testing process was performed in front of Mr. Terry. He does not outline what additional evidence he was denied, nor has he explained how such evidence would have been exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Piggie*, 342 F.3d at 666. This claim is denied.

In his second claim, Mr. Terry argues that the hearing officer was not impartial because she "directly involved herself in the investigation" and relied on "personal impressions" to find him guilty. (ECF 1 at 2.) Prison adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie*, 342 F.3d at 666. Due process prohibits a prison official who was

4

personally and substantially involved in the underlying incident from acting as a decisionmaker in the case. *Id.* Due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id.*

Despite Mr. Terry's vague assertion, there is nothing in the record to reflect that the hearing officer was involved in any way in the underlying charge. Rather, the charge was based on a urine test conducted by Sergeant Burton and witnessed by Officer Lasta. (ECF 14-1; ECF 14-10.) The fact that the hearing officer had "personal impressions" about his guilt does not mean she was impermissibly biased for purposes of the Due Process Clause. Indeed, it was her job to decide whether he was guilty, and her adverse ruling does not establish impermissible bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Mr. Terry has not overcome the presumption that the hearing officer was impartial. Therefore, this claim is denied.

In his third claim, Mr. Terry asserts that he "did not receive the right to lay representation in accordance with the Administrative Procedure[.]" (ECF 1 at 3.) It is clear from the record that a lay advocate was appointed for Mr. Terry and was present at the hearing, but Mr. Terry argues that the advocate was "acting in violation of policy or facility rules or otherwise acting inappropriately." (*Id.*) The respondent argues that this claim is procedurally defaulted. (ECF 14 at 5-8.)

Before a petitioner can obtain federal habeas relief, he must exhaust all available state remedies, and the failure to do so constitutes a procedural default precluding relief on the merits. 28 U.S.C. § 2254(b)(1)(A); *Markham v. Clark*, 978 F.2d 993, 995-96 (7th Cir.

1992). Indiana does not provide judicial review of decisions by prison disciplinary bodies, so the exhaustion requirement in 28 U.S.C. § 2254(b) is satisfied if the petitioner pursues available administrative remedies. *Moffat v. Broyles*, 288 F.3d 978, 981-82 (7th Cir. 2002). Indiana offers two levels of administrative review: an appeal to the warden, and an appeal to the state's appeal review officer. *Id.* To properly exhaust, "a legal contention must be presented to each administrative level." *Id.*; *see also Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (exhaustion under 28 U.S.C. § 2254(b)(1)(A) requires a habeas petitioner to "present both the operative facts and the legal principles that control each claim" in the state proceeding).

Here, the record shows that Mr. Terry did not raise any claim about his lay advocate in his administrative appeal. (*See* ECF 14-11 at 2-3.) It is therefore procedurally defaulted. He did not file a traverse addressing the respondent's procedural default argument, nor can the court discern any ground for excusing his default in the record. Therefore, this claim cannot be considered on the merits.

Assuming for the sake of argument that Mr. Terry could overcome his default, his claim would not entitle him to habeas relief in any event. A lay advocate is only required under the Due Process Clause when an inmate is illiterate or the issues in the case are unduly complex. *Wolff*, 418 U.S. at 570; *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992). As reflected in his filings, Mr. Terry is not illiterate. To the contrary, he filed a detailed administrative appeal and the present petition, both of which contain cogent arguments challenging the guilty finding. Nor was this a particularly complex case. Mr. Terry was tested for the use of drugs, and his urine sample tested positive in a

6

laboratory test. He was able to mount a defense, in that he argued there were irregularities in the testing process. Although the Due Process Clause did not mandate the appointment of a lay advocate under these circumstances, one was provided for him. His displeasure with the lay advocate's performance does not establish a due process violation. To the extent he is claiming that the lay advocate did not follow prison policies, the violation of prison policy or other state law does not present a cognizable basis on which to grant him federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that hearing officer failed to follow internal policies and procedures in prison handbook had "no bearing on his right to due process").

Although not entirely clear, he may be mounting an attack on the sufficiency of the evidence. To satisfy due process, there only needs to be "some evidence" to support the hearing officer's decision. *Hill*, 472 U.S. at 455. As the Seventh Circuit has explained:

> This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). A conduct report alone can provide sufficient evidence to support a finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Determining whether the "some evidence" test is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. "Instead, the relevant question is

7

whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

The conduct report authored by Sergeant Burton and the laboratory report provided sufficient evidence that Mr. Terry was guilty of using a controlled substance. To the extent he is claiming that the test was inaccurate, it is not the province of this court to reweigh the evidence to make its own determination of guilt or innocence. *Webb*, 224 F.3d at 652; *McPherson*, 188 F.3d at 786. The hearing officer was entitled to credit the evidence of guilt and reject his denials. To the extent he is arguing Sergeant Burton failed to follow prison policies in conducting the urine test,[3] this would not entitle him to federal habeas relief even if he is correct. *Estelle*, 502 U.S. at 67–68. This claim is denied.

For these reasons, the petition (ECF 1) is DENIED. The clerk is DIRECTED to enter judgment in this case.

SO ORDERED this April 12, 2021.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge

---

[3] He appears to claim that Sergeant Burton did not wait long enough in conducting a field test of the urine and should have recorded the results when the first field test failed due to a problem with the cup. (ECF 1-2 at 1-2.) However, the presence of drugs in Mr. Terry's urine was confirmed in testing by an independent laboratory; thus, any error in the field test conducted by Sergeant Burton would be harmless. *Piggie*, 342 F.3d at 666.